**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. CHRISTINE PERRIOTT, | ) | |
| | ) | |
| Plaintiff, | ) | CIV-15- 11-57-F |
| v. | ) | |
| | ) | |
| 1. HITACHI DATA SYSTEMS CORPORATION, AND | ) ) | |
| 2. ADECCO USA, INC., | ) | |
| | ) | ATTORNEYS LIEN CLAIMED |
| Defendants. | ) | JURY TRIAL DEMANDED |

**COMPLAINT**

**COMES NOW** the Plaintiff, Christine Perriott, and for her Complaint against the above-named Defendants, herein alleges and states as follows:

**PARTIES**

1. The Plaintiff is Christine Perriott, an adult female residing in Cleveland County, Oklahoma.

2. The Defendants are:

   a) Hitachi Data Systems Corporation (hereinafter referred to as "Hitachi"), an entity doing business in Cleveland County, Oklahoma; and

   b) Adecco USA, Inc. (hereinafter referred to as "Adecco"), an entity doing business in Cleveland County, Oklahoma.

**JURISDICTION AND VENUE**

3. This is a cause of action arising out of Plaintiff's former employment with

1

Defendants. Plaintiff asserts claims based on: (a) gender discrimination, the creation of a hostile work environment based on gender, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); and (b) retaliation for internal complaints of discrimination and for filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in violation of Title VII.

4. Jurisdiction over the federal claims is vested in this Court under 28 U.S.C. §1331.

5. All of the claims arose in and around Cleveland County, and the Defendants are/were at all relevant times hereto located and/or doing business in such county and may be served in that county. Cleveland County is located within the Western District of the United States District Court of Oklahoma, wherefore venue is proper in this Court under 28 U.S.C. § 1391(b).

6. Plaintiff timely filed a Charge of Discrimination with the EEOC against Defendant Hitachi on or about February 11, 2015, and amended such Charge on or about May 22, 2015. In addition, Plaintiff filed a Charge of Discrimination against Defendant Adecco on or about May 22, 2015. The EEOC issued to Plaintiff Notices of Right to Sue on both Charges on or about August 5, 2015, which were received by Plaintiff by mail thereafter. Plaintiff timely filed this Complaint within ninety (90) days of receipt of such notices.

**STATEMENT OF FACTS**

7.  On or about June 23, 2014, Perriott began working at the Hitachi plant in Norman, Oklahoma as a Production Associate I in the Customer Repair Services ("CRS") Department.

8.  Perriott was initially assigned to work at Hitachi through a temporary staffing agency. Upon information and belief, in or around September 2014, Defendant Adecco took over the contract with Hitachi to provide temporary employees at the Hitachi facility in Norman. As such, Perriott became an employee of Adecco at that time.

9.  From that point forward, Perriott was jointly employed with Hitachi and Adecco. Upon information and belief, Hitachi's production employees are hired in as temporary employees through Adecco before they become permanent employees.

10. Perriott's work schedule, job assignments and duties were dictated by Hitachi employees. For instance, Perriott was initially assigned to work in the battery section by Hitachi CRS Supervisor Russell Rutledge. Then, in or around late July 2014, Rutledge moved Perriott to train as a back-up in Wave Analysis, with the understanding that Perriott would take over the position, if needed.

11. Perriott's job performance throughout her employment was at least satisfactory, if not excellent. In fact, Perriott made suggestions and recommendations regarding work processes, one of which was adopted by Hitachi to eliminate waste and improve production efficiency. And, Perriott was told by Rutledge that she would be awarded for such

recommendation.

12.     Due to her exemplary work performance, Rutledge told Perriott on numerous occasions that she would be permanently hired by Hitachi as a Technician. Rutledge further told Perriott to keep doing good work, as this would assist Rutledge when he spoke with Hitachi about hiring Perriott as a full-time employee.

13.     In or around August 2014, Perriott was assigned to work with Hitachi employee Darrell Grizzle (White male) in Wave Analysis. Although Grizzle was supposed to continue training Perriott in this function, he refused to share information or his knowledge of the Wave Analysis function with her.

14.     Moreover, Grizzle's communications with Perriott were condescending, rude and dismissive based on Perriott's gender. He did not treat males in this fashion.

15.     Perriott made complaints to Rutledge and Hitachi CRS Leads Raymond Genato and Robert Kniffen regarding Grizzle's attitude toward Plaintiff. However, Grizzle's treatment of Perriott did not improve.

16.     On or about November 20, 2014, Anthony Coopersmith was assigned to work with Perriott in Log Analysis, a non-technical component of Wave Analysis. As Perriott had previously trained employees for Defendants, Rutledge told Perriott to train Coopersmith. Throughout the time she worked with Coopersmith, Perriott was constantly subjected to sexual comments/remarks and derogatory terms against females, further creating a sexually hostile work environment.

17. For instance, Coopersmith referred to women as "b\*\*ches" and used other derogatory terms when referencing women. Coopersmith talked very negatively about his mother and girlfriend using such derogatory terms, which was highly offensive to Perriott. And, Coopersmith talked about strippers in explicit detail. Such comments led Perriott to believe that Coopersmith held this negative attitude toward all women.

18. Perriott told Coopersmith that his comments were very offensive and that his use of such terms was insulting to Perriott as a woman. She also told him that she did not wish to be exposed to such comments. However, Coopersmith continued to use this offensive language in Perriott's presence and around other employees.

19. Due to Coopersmith's continued use of offensive comments, including but not limited to providing a detailed account of his visit to a strip club, Perriott reported Coopersmith's comments to Rutledge on or about January 10, 2015. Perriott also complained about Grizzle's refusal to train her and answer her questions.

20. Rather than address Coopersmith's and Grizzle's misconduct, Rutledge assigned Perriott to the pre-scan function, which is a lower level position than the advanced technical and analytical skills that Perriott possessed and utilized in the other positions she held. Perriott told Rutledge that she felt this move was unfair, indicating that her two male co-workers were being favored over her. She further told Rutledge the move was also discriminatory. She told Rutledge that she felt Coopersmith and Grizzle were "ganging up" on her in an effort to remove her from the Wave Analysis function. Perriott further stated

that she felt this was based on her gender, and asked whether the move was because of her complaint about Grizzle and Coopersmith.

21.     On or about January 12, 2015, Perriott met with Hitachi CRS Department Manager Farooq Raza regarding her sexual harassment complaints and Grizzle's treatment of her. Perriott told Raza that she felt her reassignment to pre-scan was unfair and discriminatory based on her gender. She further indicated that the reassignment was unfair because her two male co-workers, Grizzle and Coopersmith, were not reassigned. Raza became very angry, raising his voice, and stating that Perriott was challenging company decisions and she could be fired for it. Raza also said he was aware of Grizzle's conduct.

22.     On or about January 13, 2015, Perriott requested information from Hitachi Human Resources Representative Steven Moates regarding Hitachi's policy on addressing concerns in the workplace.

23.     On or about January 15, 2015, Perriott complained to Ashley Bernson, an Adecco Representative, about the hostile work environment.

24.     Four days later on or about January 19, 2015, Perriott was notified by Hitachi's on-site Adecco representative, Tina Strunk, that Hitachi terminated her employment. Strunk stated that Hitachi gave no reason for Perriott's termination.

25.     Following her termination on or about January 19, 2015, Perriott submitted a written statement regarding her concerns to Tracie Reagan, Adecco Branch Manager. Included in her statement was her concerns about Grizzle's treatment of Perriott and refusal

to train her, and Coopersmith's derogatory gender comments, and that she was terminated following complaints she made regarding Grizzle and Coopersmith.

26.     Thereafter, Perriott contacted Adecco several times by phone and email, including but not limited to Reagan, regarding her complaint and whether Adecco would be sending Perriott out on another assignment. Reagan told Perriott that Adecco had some jobs that Perriott was qualified for and that Reagan was communicating with Bernson about sending Perriott out on another assignment.

27.     On or about January 28, 2015, Perriott received a call from Adecco Human Resources. Adecco HR Representative Lauren Corbitt told Perriott that Corbitt received Perriott's written statement and wanted to ask Perriott questions regarding her complaint. After outlining her concerns regarding the discrimination, harassment and termination following her complaints to Hitachi, Perriott was told by Corbitt that Adecco would get back to her regarding her complaint.

28.     Despite Adecco's representations that Perriott would be assigned to another position, Perriott was not sent out on another assignment despite several follow-up calls to Reagan regarding a new assignment.

29.     On or about March 5, 2015, Perriott was contacted by Corbitt and Strunk regarding her January 19, 2015 complaint. During the conversation, Strunk told Perriott that she had been fired from Hitachi for insubordination. However, Perriott never refused to perform a job-related task. And, prior to her termination, Perriott did not receive any

discipline from Hitachi or Adecco.

30. Since Plaintiff's termination from Hitachi, Adecco has not placed Perriott in any jobs.

31. As a direct and proximate result of Defendants' actions, Plaintiff has suffered the injuries described hereafter.

### COUNT I - Title VII Gender and Retaliation

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

32. This Count goes against both Defendants.

33. The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of gender discrimination, the creation of a hostile work environment, and retaliation for her complaints of the same.

34. Plaintiff is entitled to relief under Title VII because she is female, was qualified for her job, was terminated, and her position was not eliminated after her termination.

35. Plaintiff is further entitled to relief due to the offensive and unwelcome conduct of Grizzle and Coopersmith, which was pervasive, severe, and unwelcome.

36. Plaintiff is further entitled to relief under Title VII because she engaged in a protected activity by lodging complaints of gender discrimination and a hostile work environment, she suffered an adverse action, and, as shown above, there is a causal link between the protected activity and the adverse action.

37. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

38. Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

### COUNT II - Title VII Retaliation

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

39. This Count goes against Defendant Adecco.

40. The matters alleged above constitute a violation of Title VII of the Civil Rights Act of 1964 for retaliating against Plaintiff for opposing discriminatory practices within the workplace and/or filing a Charge of Discrimination with the EEOC and for participating in the EEOC process.

41. Plaintiff is entitled to relief under Title VII because she engaged in a protected act by lodging internal complaints (regarding gender discrimination, hostile work environment and retaliation) and filing with the EEOC, she suffered an adverse action, and, as shown above, there is a causal link between the protected act and the adverse action.

42. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of

1991.

43.     Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendants and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 14th DAY OF OCTOBER, 2014.**

>    s/Jana B. Leonard
> JANA B. LEONARD, OBA# 17844
> LAUREN W. JOHNSTON OBA# 22341
> LEONARD & ASSOCIATES, P.L.L.C.
> 8265 S. WALKER
> OKLAHOMA CITY, OK 73139
> (405) 239-3800     (telephone)
> (405) 239-3801     (facsimile)
> leonardjb@leonardlaw.net
> johnstonlw@leonardlaw.net
>
> JURY TRIAL DEMANDED
> ATTORNEY LIEN CLAIMED